UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIE EVANS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:19CV842 JCH |
| ) | |
| EILEEN RAMEY, ) | |
| ) | |
| Respondent. ) | |

### **MEMORANDUM AND ORDER**

This matter is before the Court on Missouri State prisoner Willie Evans's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition is fully briefed and ready for disposition.

On August 19, 2015, a jury in the Circuit Court of St. Louis County, Missouri, found Petitioner guilty of one count of assault in the first degree and one count of armed criminal action. On November 20, 2015, Petitioner was sentenced as a dangerous offender to thirty years imprisonment on each count, with said sentences to run consecutively. The Missouri Court of Appeals affirmed the convictions and sentences. *State v. Evans*, 516 S.W.3d 452 (Mo. App. 2017). Petitioner thereafter filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied after an evidentiary hearing. The Missouri Court of Appeals affirmed the denial of post-conviction relief. *Evans v. State*, 567 S.W.3d 693 (Mo. App. 2019).

Petitioner is currently incarcerated at the Jefferson City Correctional Center in Jefferson City, Missouri. As the Court construes the instant petition for writ of habeas corpus, Petitioner raises the following two claims for relief:

(1)  That Petitioner received ineffective assistance of counsel, in that trial counsel failed to present the testimony of prospective witness Gregory Kuntz; and

(2)  That Petitioner received ineffective assistance of counsel, in that trial counsel failed to present the testimony of prospective witness Paula Teabeau.

## DISCUSSION

As stated above, in Ground 1 of his petition Petitioner asserts that he received ineffective assistance of counsel, in that trial counsel failed to present the testimony of prospective witness Gregory Kuntz. In Ground 2 Petitioner claims he received ineffective assistance of counsel, in that trial counsel failed to present the testimony of prospective witness Paula Teabeau. Petitioner raised these claims before the 29.15 post-conviction motion court, and the court denied the claims as follows:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

15.  Point 8a alleges ineffective assistance of trial counsels Moody and Kilgore[1] for failing to call two witnesses in Movant's[2] second trial who testified in the first trial that ended in a hung jury. The two witnesses were Kuntz and Teabeau. Kuntz was the Service Manager at ELCO Cadillac. He testified that Movant's wife's Cadillac was driven to ELCO for automotive service the morning of August 5, 2011, and checked in for service at about 8:52 in the morning. The person who brought the car in for service complained that the car hesitated while driving. ELCO determined that it just needed some oil. Kuntz was unable to testify that the car was not drivable or that it had been at ELCO at the time of the crime, approximately seven or eight hours before it was checked in at ELCO. At the first trial, he added that when people generally notice that hesitation, they will want to get it fixed right away; making it believable that Movant noticed the hesitation when he was driving it to do the shooting that night. Trial counsel Moody testified that from her experience as a prosecutor, she found that it hurt the defense more when they offered evidence that was not probative to a defense. Kilgore testified similarly, but from an experienced defense viewpoint. They both testified that if Kuntz was unable to say that the Cadillac could not have been driven by Movant to commit the shooting, his testimony would do more harm than good. The victim, Roosevelt Word,

---

1 Petitioner was represented during his second trial by Ms. Nicole Moody and Mr. Patrick Kilgore.
2 Petitioner is referred to as "Movant" by the 29.15 motion court and the Missouri Court of Appeals.

had testified at the trial that he recognized Movant driving Movant's wife's Cadillac when he was shot. Moody and Kilgore testified that they consulted each other and determined that Kuntz, or anyone from the ELCO service department, should not be called if they could not give the Movant an alibi. This is pure trial strategy, and good strategy under the facts of this case.

Paula Teabeau is the coordinator of the Electronic Home Detention (EHD) and GPS programs for the County jail. Movant's bond conditions during 2012 included that he comply with the EHD rules that restricted his freedom to leave his home. Teabeau testified at the hearing that Movant was permitted to leave his residence for periods when he was to take his grandchild to and from school, to go to the doctor for his appointments, to go to work if he was working, or for any other reason if he were to just call ahead and get permission. Teabeau testified that EHD is not a locator device. The ankle monitor merely registers if the person is within distance range of the base station at the house. When out of range without permission, the device registers a violation. On the date that witness Ivie testified Movant stopped in front of Ivie's girlfriend's home on Peurifoy Avenue, September 12, 2012, Ms. Teabeau could not say that Movant was not there. Movant had permission to be away from his home, but she had no way of knowing where he was. Teabeau testified as an example that if Movant had permission to go to work, but called in sick instead, she would not know. In that case he could go anywhere during that time slot and the device would not register a violation. Both Moody and Kilgore testified that they consulted with each other and decided that if Teabeau could not prove that Movant was not on Peurifoy conveying threats to Roosevelt Word through Mr. Ivie, that it would be much like the ELCO service manager, putting on a witness whose testimony was not probative to a defense. It would likely backfire on them. Her testimony would not have given Movant an alibi for the September 12, 2012 conversation with Ivie. This is also pure trial strategy, and good strategy under the facts of this case.

Movant testified at the hearing that he had hired Ms. Kristy Ridings for the trial, but that he understood she was on maternity leave for the second trial. He had to choose between Moody and Kilgore or wait in jail for Ms. Ridings to return to work. He chose Moody and Kilgore, but he testified that he wanted them to make a plea bargain deal. Then, in a conflicting manner, he testified that he was innocent. He has a prior conviction for murder in Illinois for which he received a twenty-five (25) year sentence. Movant's testimony was not credible. This court does not believe his testimony that was offered to support his claims related to witnesses Kuntz and Teabeau.

Point denied as to witnesses Kuntz and Teabeau.

16.     In order to prevail on a claim of ineffective assistance of counsel

> movant must show that his attorneys' conduct fell below that of reasonably competent attorneys under the same or similar circumstances and that movant was thereby prejudiced. Trial counsels' conduct in this case were within the range of reasonableness that is expected of competent attorneys in the same situation and none of movant's allegations, even if true, would have changed the outcome of the trial. Also, trial counsel's strategy in not calling the defense witnesses was proper. Movant has not carried his burden.
>
> Movant's postconviction claims in his motion to vacate and amended motion to vacate involve allegations of ineffective assistance of counsel. For claims of ineffective [assistance] of counsel, movant must prove that trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and that such deficient performance prejudiced the defense. *Branyon v. State*, 304 S.W.3d 166, 173 (Mo. App. E.D. 2009) and *Ayres vs. State*, 93 S.W.3d 827, 830 (Mo. App. E.D. 2002) (citing *Strickland vs. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "To prove prejudice, movant must show that, but for trial counsel's deficient performance, there was a reasonable probability that the result of the proceeding would have been different." *Barton vs. State*, 68 S.W.2d 493, 493 (Mo. App. E.D. 2001). In examining the trial counsel's customary skill and diligence, it is presumed that counsel's conduct was reasonable and effective, and movant must overcome a strong presumption that his trial counsel provided competent representation by demonstrating that his counsel's representation "fell below an objective standard of reasonableness." *Branyon*, supra.
>
> In the motion to vacate, movant did not meet his burden in proving his allegations that trial counsel was ineffective for failure to call two witnesses during the trial. Also, movant's testimony as indicated above was simply not credible. See *Chaney v. State*, 323 S.W.3d 836 (Mo. App. E.D. 2010) (trial court's discretion on credibility of witnesses). Additionally, trial counsel's decision not to call the witnesses was a matter of proper trial strategy. See *Smith v. State*, 972 S.W.2d 551, 556 (Mo. App. S.D. 1998). Certainly, trial counsel was not ineffective for this sound trial strategy.

(Resp.'s Exh. 14, PP. 116-119). Petitioner advanced the claim on appeal of the denial of his Rule 29.15 motion, and the Missouri Court of Appeals denied the claim as follows:

> On August 4, 2011, Roosevelt Word ("Victim") was shot in a drive-by shooting, and identified Movant as the shooter. Movant was subsequently arrested and charged with assault in the first degree and armed criminal action. Later in August of 2011, Movant was released on bond and placed on electronic home detention…

– 4 –

Movant's first trial was held on January 5, 2015.  Two witnesses, Paula Teabeau ("Teabeau"), Movant's case manager (while he was on electronic home detention), and Gregory Kuntz ("Kuntz"), a service manager at ELCO Cadillac (a vehicle service center), were called to testify for the defense.  On January 8, 2015, due to a hung jury, the trial court declared a mistrial…

Two weeks prior to the second trial, Movant was informed that he would be represented by Nicole Moody ("Moody") and Patrick Kilgore ("Kilgore") because his first trial counsel was on maternity leave.  Movant's second trial was held on August 17, 2015.  The evidence admitted at the second trial showed the following….

[After fighting in Movant's car] Movant ordered Victim to get out of his vehicle.  Both [William] Cornell and Victim exited Movant's vehicle, and began to walk home.  Cornell was walking ahead of Victim when Victim saw a Cadillac SUV come down the street.  When the Cadillac pulled up next to Victim, Victim noticed that the driver had a pistol in his hand, and began to run.  Victim was shot in the left side, left arm, and left buttocks.  After the shooting had ceased, Cornell found Victim wounded on the sidewalk and called 9-1-1.  Victim was "100 percent certain" Movant was the shooter, who was now driving his wife's Cadillac….

Further, Phillip Ivie ("Ivie"), a resident in Victim's neighborhood, testified that on September 12, 2012, thirteen months after the shooting, Movant came to him and asked him to tell Victim that he should be happy that Movant "let [Victim] live and [Victim] should just drop the case and just let the case go."  Ivie conveyed the message to Victim.

Movant's trial counsel did not call any witnesses to testify.  After hearing all of the evidence, the jury found Movant guilty of both charges….

Movant offers two points on appeal, arguing in each that the motion court clearly erred in denying his Rule 29.15 motion because he proved by a preponderance of the evidence that his trial counsel was ineffective for failing to call two witnesses to testify at his second trial. Because both points rest on whether counsel was ineffective, we apply the test from *Strickland v. Washington,* 466 U.S. 668 (1984) to each point. To establish ineffective assistance of counsel under *Strickland,* a movant must prove "by a preponderance of the evidence that (1) trial counsel failed to exercise the level of skill and diligence that reasonably competent counsel would exercise in a similar situation and (2) the movant was prejudiced by that failure." *Hopkins v. State*, 519 S.W.3d 433, 436 (Mo. banc 2017); *Strickland*, 466 U.S. at 687.

To satisfy the first prong, a movant must overcome the strong presumption that trial counsel's conduct was reasonable and effective by showing "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *McGuire,* 523 S.W.3d at 563 (quoting *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009)). To satisfy the prejudice prong of the *Strickland* test, a movant must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006); *Strickland*, 466 U.S. at 694.

Trial counsel's decision to not call a witness is presumptively a matter of reasonable trial strategy and will not support a claim of ineffective assistance of counsel unless a movant establishes otherwise. *Jones v. State*, 519 S.W.3d 879, 885 (Mo. App. E.D. 2017). "To prevail on a claim of ineffective assistance of counsel for failure to call a witness, the movant must show what the witness would have testified to and that the witness' [sic] testimony would have aided the defense." *Hilliard v. State*, 550 S.W.3d 130, 134 (Mo. App. E.D. 2018). Movant has failed to show that trial counsel was ineffective because he has failed to prove that trial counsel's decisions to not call Kuntz and Teabeau to testify was not reasonable trial strategy.

First, Movant argues that trial counsel's decision to not call Kuntz to testify was not reasonable trial strategy because "Kuntz's testimony would have provided a viable defense"; Movant claimed that Kuntz's testimony would have been that Movant could not have driven his wife's Cadillac the night of the shooting because the Cadillac was "malfunctioning to the extent that it would be patently unsafe to drive it that night." Movant's argument is without merit. At the evidentiary hearing, Kuntz testified that he was the service manager at ELCO Cadillac from 2011 to 2015. Kuntz confirmed that a Cadillac SRX was checked in on August 5, 2011 (the day after the shooting), which was owned by Movant's wife. The car was brought in for "hesitation while driving" and it was determined that the car was low on oil. The car was drivable and had in fact been "driven to the shop" for service; it was checked in at 8:52 a.m. and checked out at 10:30 a.m. Moody testified that she did not call Kuntz as a witness because his testimony "wasn't determinative of where [the Cadillac] had been the night of the incident in question." Moody further stated that she thought Kuntz's testimony was not relevant because "anyone can have issues with a vehicle and still drive it." Kilgore testified similarly, and explained that Kuntz's testimony was not relevant because he could not say that the "[Cadillac] was present at that service station during the time this offense occurred." Trial counsel believed that Kuntz's testimony could cause them to lose credibility with the jury because the testimony did not provide an alibi or directly refute any of the State's evidence.

– 6 –

Kuntz's testimony could not aid the defense because Kuntz could not confirm that, at the time of the shooting, the Cadillac was (1) at the Cadillac service center or (2) not drivable due to mechanical issues. Kuntz's testimony would only show that the Cadillac was taken in for service the morning after the shooting and that it required service due to low levels of oil, but was otherwise operational and drivable. Contrary to Movant's contention that the Cadillac was malfunctioning and was unsafe to drive, the record indicates that the vehicle was indeed drivable since it was driven to the Cadillac service center the morning after the shooting. Therefore, trial counsel was not ineffective for failing to call Kuntz as a witness because his testimony did not aid Movant's position that the Cadillac was not drivable at the time of shooting. *See Wright v. State*, 466 S.W.3d 735, 738 (Mo. App. E.D. 2015) ("When defense counsel believes a witness' [sic] testimony would not unequivocally support the client's position, it is a matter of trial strategy not to call him, and the failure to call such witness does not constitute ineffective assistance of counsel."). Thus, we find that Kuntz's testimony would not have provided Movant with a viable defense, and trial counsel's decision to not call Kuntz as a witness was reasonable trial strategy.

Second, Movant argues that trial counsel was ineffective for failing to call Teabeau as a witness because she would have testified to his electronic home detention and supported his position that he had not visited Ivie on September 12, 2012. Movant's argument fails because Teabeau's testimony would not have provided Movant with a defense, specifically an alibi, or rebut Ivie's testimony that Movant visited him on September 12, 2012. At the evidentiary hearing, Teabeau testified that she was the case manager assigned to supervise Movant while he was released on bond and placed on electronic home detention. She explained that, as a condition of his bond, Movant was required to wear an ankle monitoring device; the device was not GPS based, meaning that it only registered when Movant was inside or outside the permitted radius of his home, but it did not register Movant's exact location. Teabeau confirmed that Movant had permission to leave his home for specific periods of time and a violation would be noted if Movant was outside the radius of his home without prior permission. In regards to Movant's whereabouts on September 12, 2012, Teabeau testified that Movant had been given permission to leave his home throughout the day, and during those permitted times, Movant could have driven to see Ivie without her knowledge. Further, trial counsel testified that the decision to not call Teabeau as a witness was due to her lack of knowledge of Movant's exact whereabouts on September 12, 2012, and that Teabeau's testimony could not aid the defense.

Teabeau's testimony would not be probative of a defense because it did not prove that Movant was at home or at another permitted location (and not visiting Ivie) on September 12, 2012. As Movant has conceded in his

– 7 –

> appellant's brief, even within a 21-minute window that Movant was allowed to leave his residence, it was possible for Movant to drive to see Ivie, converse with Ivie, and return home without detection. Therefore, trial counsel's decision to not call Teabeau to testify was reasonable trial strategy because her testimony would not have impeached Ivie's testimony that Movant came to visit him on September 12, 2012. *See Eye v. State*, 551 S.W.3d 671, 675 (Mo. App. E.D. 2018) ("If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance."). Therefore, Movant has failed to meet his burden of showing that trial counsel's decision to not call Teabeau as a witness was not reasonable trial strategy.
>
> Without evidence of deficient performance of counsel, we need not consider whether Movant was prejudiced. *Jackson v. State*, 535 S.W.3d 374, 379 (Mo. App. E.D. 2017); *see also Robinson v. State*, 469 S.W.3d 871, 879 (Mo. App. E.D. 2015) ("A movant must satisfy both the performance prong and prejudice prong of the ineffective assistance of counsel test, and if a movant fails to satisfy one prong, we need not consider the other."). However, we also do not consider the prejudice prong because Movant fails to show how trial counsel's allegedly deficient performance in failing to call Kuntz and Teabeau as witnesses prejudiced him; Movant fails to explain how testimony from either individual would have contradicted the testimony given by the State's witnesses, which supported his conviction, and changed the outcome of the trial. *See McKee v. State,* 540 S.W.3d 451, 456 (Mo. App. W.D. 2018) ("[T]he movant bears the burden of proving both [*Strickland*] prongs by a preponderance of the evidence."). Accordingly, the motion court did not clearly err in denying Movant's Rule 29.15 motion.
>
> Points I and II are denied.

(Resp. Exh. 18, PP. 2-4, 7-11).

With respect to federal court review of state court conclusions, 28 U.S.C. § 2254 states in pertinent part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>        (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (d).

Under federal law, in order to prevail on his ineffective assistance of counsel claim, Petitioner must show that his attorney's performance was "deficient," and that the deficient performance was "prejudicial." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. To overcome this presumption, Petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.*

Even if Petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. *Id.* at 694. To do so, Petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Upon consideration the Court finds that with his claims, Petitioner fails to establish deficient performance on the part of Ms. Moody or Mr. Kilgore. During the evidentiary hearing on Petitioner's post-conviction motion, Mr. Kuntz testified that someone brought in a Cadillac SUV to be serviced on August 5, 2011.[3] (Resp. Exh. 13, PP. 7-8). He testified that according to his records, the vehicle was brought in at 8:52 a.m., and service was completed at 10:30 a.m. (*Id.*, P. 8). Ms. Paula Teabeau also testified during the evidentiary hearing, stating that she was a case

---

3 While Mr. Kuntz was unclear as to who brought in the SUV, he later clarified that the customer listed on the ticket was Ms. Helen Evans.

manager for St. Louis County Justice Services in the Electronic Home Detention Department, and Petitioner was a client on her caseload.  (*Id.*, PP. 13-14).  She testified that while the electronic monitoring to which Petitioner was subject at the time of the alleged incident with Mr. Ivie would inform her when he left his home and when he returned, it would not tell her where he went in the interim.  (*Id.*, P. 16).  Finally, both of Petitioner's attorneys testified that they made strategic decisions not to call the two witnesses, because they would not have provided a defense for Petitioner.[4]  (*Id.*, PP. 28-31, 36, 44-46).

From this testimony, the 29.15 motion court and the Missouri Court of Appeals found counsels' determination that Mr. Kuntz would not have provided a viable defense for Movant was reasonable, because his testimony that Movant's wife's Cadillac was driven to ELCO for automotive service the morning of August 5, 2011, did not establish it was not drivable or was at ELCO at the time of the crime, approximately seven or eight hours prior.  Similarly, the state courts found that Ms. Teabeau could not provide a defense, because the monitoring device Movant was wearing only registered a violation when he was out of range without permission; it did not provide information as to his location at any given time.  These findings were not unreasonable in light of the evidence presented in state court, and thus the Court finds trial counsels' failure to call Mr. Kuntz and Ms. Teabeau on Petitioner's behalf at trial did not fall outside the wide range of professionally competent assistance sanctioned by *Strickland*.  *See Id.* at 690 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").[5]  Grounds 1 and 2 of Petitioner's § 2254 petition must therefore be denied.[6]

---

4 Ms. Moody testified that the "major point of the whole defense" was that the complaining witness was under the influence of alcohol and narcotics at the time of the incident. (Resp. Exh. 13, PP. 31-32).
5 As further support for its ruling, the Court notes the 29.15 post-conviction motion court found Movant's testimony that he asked for the two witnesses to be called incredible, in light of his additional testimony that he wanted his attorneys to arrange for a plea bargain.
6 In light of the above ruling, the Court need not consider whether counsels' allegedly deficient performance caused

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice.  A separate Order of Dismissal will accompany this Memorandum and Order.

---

prejudice to Petitioner.  The Court notes, however, that the evidence of Petitioner's guilt at trial was strong, as the victim, Mr. Roosevelt Word, testified that he knew Petitioner well, and it was Petitioner who shot him three times.  (*See* Resp. Exh. 5, PP. 24, 49-52, 64-65).

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998).

Dated this ___24th___ Day of April, 2020.

\s\ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE